**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **RHONDA L. LASHURE,** ) ) Plaintiff, ) ) v. ) ) **MICHAEL J. ASTRUE,** ) **Commissioner of the Social** ) **Security Administration,** ) ) Defendant. ) ) | **Case No. EDCV 07-1154 AJW** **MEMORANDUM OF DECISION** |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe mental impairments consisting of schizoaffective disorder, post traumatic stress disorder, and a history of drug abuse (methamphetamine). [Administrative Record ("AR") 15]. The ALJ concluded that plaintiff was not disabled because her impairments did not preclude her from performing her past relevant work as an auto parts delivery driver

1  or salad bar attendant. [See JS 2; AR 17].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Treating source opinions**

Plaintiff contends that the ALJ erred in failing to consider and discuss the findings and opinion of plaintiff's treating psychiatrist and treating licensed clinical social worker ("LCSW") at the County of Riverside Department of Mental Health ("County Mental Health"). [JS 3-7].

Plaintiff was evaluated at a County Mental Health clinic in February 2006 for uncontrolled crying, flashbacks of physical abuse by her first husband, and other symptoms. [AR 147-148]. The intake evaluation states that she was referred by "ETS," apparently a reference to the Emergency Treatment Services division of the County's Regional Medical Center in Riverside. [AR 147; see AR 96, 100, 256]. Plaintiff and her husband reported that they were homeless and living in a shelter. [AR 147]. John Wells, LCSW, conducted an initial evaluation and diagnosed post traumatic stress disorder ("PTSD") and schizoaffective disorder with psychosis. [AR 147-148, 172]. Plaintiff was referred to Dr. Petersen, who began treating her on March 13, 2006. [AR 145-176, 218-250, 258-259].

During plaintiff's initial visit, Dr. Petersen took a history and conducted a mental status examination.

1 He diagnosed major depressive disorder and post-traumatic stress disorder, for which he initially prescribed
2 the anti-depressant Effexor.[AR 165-167]. Dr. Peterson also completed a County medical report certifying
3 under penalty of perjury that plaintiff's mental condition was disabling and was expected to last until
4 September 1, 2006. [AR 164].

5 Plaintiff began attending monthly "Better Life Group" therapy sessions at the County Mental Health
6 clinic. [AR 152-154, 159, 223, 227, 229]. She saw Dr. Petersen for monthly medication monitoring in June
7 2006 and August 2006, when he switched her to Lexapro. [AR 157, 165]. On August 16, 2006, Dr. Petersen
8 signed a County assessment form listing plaintiff's diagnoses as major depressive disorder and PTSD. [AR
9 149]. In the pre-printed portion of the form asking him to circle the criteria that applied, Dr. Petersen
10 indicated that plaintiff's memory and judgment were mildly impaired, and that there was evidence of
11 insomnia, confusion, phobias, depression, anxiety, panic episodes, compulsive behaviors, decreased energy,
12 isolation, inappropriate affect, avolition, social withdrawal, and affective flattening. [AR 149]. He said that
13 plaintiff's thought process was organized, without current evidence of psychosis, and she could interact
14 appropriately with others. Dr. Petersen opined that plaintiff would have difficulty maintaining a sustained
15 level of concentration, and could not sustain repetitive tasks for an extended period, adapt to new or stressful
16 situations, or complete a 40-hour work week without decompensating. He said that plaintiff's attitude was
17 fearful, anxious, and tearful, and that she needed assistance with medication and keeping appointments. [AR
18 149]. In the "comments" section of the report, Dr. Petersen wrote that plaintiff exhibited "significant anxiety
19 symptoms, complicated by homelessness. Expect improvement as meds are adjusted and if social situation
20 improves. Currently would not do well in employment but may eventually." [AR 149].

21 In September 2006, plaintiff had what she described as an "isolated incident" of using speed after
22 a period of having abstaining from its use for some time. Plaintiff testified that she had stopped using street
23 drugs about a year and a half before the hearing except for the "isolated incident" in September 2006. She
24 said she stopped taking her prescribed medication because she thought she was "okay," used speed to
25 "medicate myself,", and became "severely depressed and suicidal," leading her to seek voluntary emergency
26 hospitalization [AR 255-256, 260, 267; see AR 219-220]. Plaintiff kept her appointment with Dr. Petersen,
27 who switched her to Cymbalta. As documented by his progress notes and plaintiff's testimony, Dr. Petersen
28 continued to treat her through April 2007.[AR 219-250, 258-260]. Plaintiff testified that she was receiving

3

treatment and medication for free because she and her husband were homeless, slept in a tent in a field, and subsisted on food stamps and panhandling. [AR 256-258].

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn v. Astrue, 495 F.3d 625, 631-632 (9th Cir. 2007);Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) ; Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. Even where a treating physician's opinion is contradicted by substantial evidence in the record, such as the opinion of an examining physician based on independent clinical findings, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in the Commissioner's regulations. Orn, 495 F.3d at 632 (quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[1] The ALJ cannot reject a controverted treating source opinion without articulating clear and convincing reasons, supported by substantial evidence in the record, for doing so. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001).

The ALJ did not mention Dr. Petersen, discuss his treatment of plaintiff, or give reasons for rejecting his March 2006 and August 2006 assessments. Defendant contends that the ALJ did not commit legal error because his decision refers to the exhibit in which Dr. Petersen's August 2006 report is found. [JS 5-6]. The ALJ noted that

> while the claimant alleges she has been disabled due to mental problems since 1985, she did not seek any mental health treatment until January 2006, and even then only did so to bolster her claim for disability benefits. That is, while she did occasionally recite a litany of

---

[1] Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn,495 F.3d at 631; 20 C.F.R. §§ 404 .1527(d)(2)-(6), 416.927(d)(2)-(6).

symptoms, she generally focused on her frustration at being denied disability benefits or simply discussed superficial family relationship problems.

[AR 16-17 (citing Exhibits 1-F, 7-F, and 8-F)].

The ALJ's mere allusion to the evidence reflecting plaintiff's psychiatric treatment does not satisfy the ALJ's burden under the well-established principles governing the evaluation of a treating physician's opinion. Moreover, the ALJ cited no evidence to support his conclusory assertion that plaintiff sought mental health treatment merely to bolster her disability claim. See Nguyen v. Chater, 100 F.3d 1462, 1464-1465 (9th Cir. 1996) (holding that the ALJ impermissibly rejected an examining psychologist's diagnosis of depression where the claimant did not seek treatment for more than three years and then consulted the psychologist at the request of his attorney, and noting that "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the examining psychologist's] assessment of claimant's condition is inaccurate. . . ."). The ALJ concluded that plaintiff did nothing more than "recite a litany of symptoms" while silently disregarding over a year's worth of treatment reports from County Mental Health that documented abnormal findings, clinical diagnoses, disability assessments, and ongoing treatment in the form of therapy and medication. Cf. Ryan v. Comm'r of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008)(holding that the ALJ did not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the claimant's complaints where the doctor did not discredit those complaints and supported his or her ultimate opinion with clinical observations and mental status examination findings).

Standing alone, the ALJ's failure to give reasons for rejecting the evaluation performed by John Wells is not reversible error because an LCSW is not an "acceptable medical source" within the meaning of the regulations. Nonetheless, information from "other sources" may be considered to assess impairment severity and its affect on the ability to work. 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(defining an "acceptable medical source," and explaining that information from "other sources" also may be considered); see Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other sources"), cert. denied, 519 U.S. 881 (1996). The findings and conclusions made by Wells were consistent with those of Dr. Peterson, and that is a factor that weighs in favor of giving "deference" to the treating physician's opinion. See Orn, 495 F.3d at 632 (quoting SSR

5

96-2p at 4); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff's "focus" on her frustration at being denied disability benefits is not a valid reason for ignoring treating source findings or opinions, and her frustration is understandable. The record indicates that plaintiff seemed confused about the application process and encountered difficulties with her benefits application due to her homelessness and problems in the agency's processing of her claim. Unsurprisingly, plaintiff focused on those issues in contacts with her County Mental Health "benefits specialist" case worker, whose notes (again unsurprisingly) focus on the goal of obtaining benefits rather than on the merits of plaintiff's underlying disability claim. [See, e.g., AR 236-238].

The ALJ did not properly evaluate the treating source evidence from County Mental Health and committed reversible legal error in failing to articulate specific, legitimate reasons for rejecting the opinions of Dr. Petersen. See Orn, 495 F.3d at 632; Tonapetyan, 242 F.3d at 1148. Because it is not clear from the record that the ALJ would be required to award benefits if that evidence had been properly evaluated, the appropriate remedy is a remand for further administrative proceedings and a new decision.

**Lay witness testimony**

Plaintiff contends that the ALJ erred in failing to discuss hearing testimony and a written third-party "Function Report" from plaintiff's husband, James Craighead. [JS 10-12].

Under Ninth Circuit law, "[t]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings." Robbins, 466 F.3d at 885. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

The ALJ erred in ignoring Mr. Craighead's testimony, which was consistent with his wife's testimony.[2] That error itself does not require reversal because Mr. Craighead's testimony, if believed, does not lead ineluctably to the conclusion that plaintiff is disabled; however, it is an additional reason supporting reversal.

///

---

[2] Plaintiff does not challenge the ALJ's credibility finding with respect to plaintiff's testimony.

6

**Hypothetical questions**

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was legally flawed because it did not include any of the impairments and functional limitations found by Dr. Umakanthan.

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities. . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886; Tackett, 180 F.3d at 1101.

The ALJ erred in evaluating the treating source evidence, and therefore his hypothetical questions to the vocational expert are "legally inadequate." Robbins, 466 F.3d at 886 (reversing and remanding where the ALJ's flawed evaluation of evidence led him to omit from the hypothetical question limitations that could have been determinative of the vocational expert's testimony).

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns

upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The appropriate remedy in this case is a remand for further administrative proceedings because it is not clear from the record that the ALJ would be required to award benefits if the ALJ properly weighed the medical opinion evidence. On remand, the ALJ shall conduct a supplemental hearing and issue a new decision that applies the correct legal principles and includes a complete evaluation of the medical evidence and testimony of record.

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is reversed, and the case is remanded for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: August 27, 2008

_____
ANDREW J. WISTRICH
United States Magistrate Judge